Peck, J.
The right of municipal corporations, under the eon•.stitution of 1851, when empowered by their respective charters, to impose special or local assessments upon property in the immediate vicinity of a public improvement, as distinguished from the power •of general taxation, is no longer to be regarded as an open question in Ohio. Ernst v. Kunkle, 5 Ohio St. 520, and Hill v. Higdon, Ib. 246, are in point, and establish that such assessment may be made in proportion to the feet front, as well as *upon the value of the lands, as assessed for taxation.
Section 116 of the act to provide for the organization of cities, etc. .(Swan’s Stat. 985), authorizes the assessment to be made in either xmode, and these cases establish that an assessment, in proportion *131 to the feet front, is not unconstitutional. The law purposely leaves the city authorities free to adopt whichever mode they, under the circumstances, may deem most equitable, and in some cases, certainly, the ratio per foot front would approximate more nearly to the benefits received than a uniform percentage upon the jmeviously assessed valuation. The cases above cited from 5 Ohio, were reconsidered and affirmed in Reeves v. Treasurer of Wood county, 8 Ohio St. 333, and also in three cases at the present term—Foster v. Commissioners of Wood county, Daniels v. Keeler, and Fitch v. Keeler. The two.last cases also arose in the city of Toledo,under the constitution of 1851, and were obnoxious to all the constitutional objections urged in the case at bar, and to the further objection, that the property abutting only upon the improved portion of the street, had been assessed to defray the expense; it being insisted that section 116 above mentioned, required the assessment to be made upon all, and not merely a part of the property abutting- upon the street. This last objection is fully met and answered by the case of Scovill v. The City of Cleveland, 1 Ohio St. 133. In that ease, the city •council, by the city charter, was authorized to levy a special tax to defray the expense of grading or improving any road, street, .alley, or lane, upon the land or ground abutting upon such road, etc. -or near thereto, and it was held that such special tax might be levied entirely upon that part of the street which had been improved. The court say: “We do not understand counsel as contending that a part of a street might not in this manner be improved without undertaking the whole, but they insist that the assessment must be upon the whole. We think this construction entirely inadmissible. If the council have power, under the general words ‘any street,’ etc., in *the first clause of the section, to improve a part of a street, as appears to be conceded, it seems to us clear that the words in the next clause, ‘ grounds bounding and abutting on such street,’ confine the assessment to ground on the part of the street improved.”
But it is said that railroads, like canals and turnpike roads, the property of individuals, are in the nature of public easements, and not subject to taxation for general or special purposes, and we have been referred to authorities from other states to the effect, that such public easements are not liable to taxation. The first answer which suggests itself to this proposition is, that the road-bed as well as the rolling-stock and other personal property of said railroad com *132 pañíes is taxable in Ohio, for general revenue. Swan’s Stat. 926,. sec. 77. In the case of the Providence and Worcester R. R, Co. v. Wright, 5 R. I. 459, it was. held that the rails, sleepers, bridges, etc., of a railroad company, together with their easement in the lands within the located limits of the road, are real estate, and as such, liable to taxation in the towns where situated, and notwithstanding-its public character, that it is still the property of the corporation, and liable to taxation. See also, to the same effect, Mohawk and Hudson R. R. Co. v. Clute and others, 4 Paige Oh. 384; Wheeler v. Rochester and Syracuse R. R. Co., 12 Barb. 227; Sangamon and Morgan R. R. Co. v. County of Morgan, 14 Ill. 163. If railroad tracks are taxable for general purposes, it is difficult to perceive-why they should not be subject also to special taxes or assessments. The company, to advance its own interests, has seen fit to appropriate to its use, ground within the corporate limits of the city of Toledo, and over which that city had the power of making assessments to defray the expense of local improvements, and why should not the company be held to have taken it cum onere? A citizen would scarcely claim exemption, because he had devoted his lot to uses which the improvement could not in any way advance, and we see no good reason why a ^railroad company should be permitted to do so. The company have the exclusive right to the possession, so long as it is used for the. road, and if the road-bed was exempt from taxation for general purposes, it would by no means follow that it was not liable for such special assessments. See 11 Johns. 77, where church sites, which by the laws of New York, were exempt from taxation, were held to be liable for such assessments.
But it is said that assessments, as distinguished from general taxation, rest solely upon the idea of equivalents, a compensation proportioned to the special benefits derived from the improvement, and that in the case at bar, the railroad company is not, and in the nature of things can not bo, in any degree, benefited by the improvement. It is quite true that the right to impose such special taxes, is based upon a presumed equivalent;. but it by no means follows that there must be in fact such full equivalent in every instance, or that its absence will render the assessment invalid. The rule of apportionment, whether by the front foot or a percentage upon the assessed valuation, must be uniform, affecting all the owners and all the property abutting on the street alike. One rule *133 ■van not be applied to one owner and a different rule to another owner. One could not be assessed ten per cent., another five, another three, and another left altogether unassessed because he was not in fact benefited. It is manifest that the actual benefits resulting from the improvement, may be as various almost as the number of the owners and the uses to which the property may be •appLied. No general rule, therefore, could be laid down which would do equal and exact justice to all. The legislature have not .attempted so vain a thing, but have prescribed two different modes in which the assessment may be made, and left the city authorities free to adopt either. The mode adopted by the council becomes the statutory equivalent for the benefits conferred, although in fact •the burden imposed may greatly preponderate. In such case, *if no fraud intervene, and the assessment does not substan•tially exhaust the owner’s interest in the land, his remedy would •seem to be, to procure, by a timely appeal to the city authorities, .a reduction of the special assessment and its imposition, in whole or in part, upon tho public at large.
The constitution of 1851, article 13, section 6, made it the duty •of the legislature to provide by general laws for the organization of cities and incorporated villages, and restrict their power of taxation, assessment, etc., etc. This tho legislature have done or attempted to do in the statute above mentioned. It evidently supposed that a just and proper assessment might be made, by apportioning the expense among the lands abutting upon the improvement, in proportion to the front feet of the respective lots, as was •said in The People v. The Mayor of Brooklyn, 4 Comst. 433, under .a similar provision in the constitution of the State of New York. “ If street assessments are in their practical operation oppressive .and unjust, the statutes which authorize them should be repealed. The remedy for unjust or unwise legislation is not to be administered by the courts.” The statute was passed in attempted fulfillment of the duty enjoined by tho constitution, and we do not feel at liberty to disregard its plain and unmistakable provisions, and .hold the law invalid, because it apportions the expense in proportion to feet fronting upon the street, or because one of the landowners is not benefited to the extent of the burden imposed.
Again, it is claimed that the statute (sec. 116) only authorizes an assessment of the expense of an improved street upon the “ lots ■and lands ” abutting thereon, and that the land appropriated for *134 the track of the railroad and occupied exclusively for that purpose, and which crosses the improved street at right angles, is not, in any just, or proper sense, “lots or lands” within the meaning of said section. And we have been referred to the case ' *in 8 Watts & Serg. 334, which the court in 6 Barr, 70, recognize, but say they are unwilling to extend, and in which it was decided that the bed, basin, bank, and towing-path of a canal form a part of the canal, and were not taxable under the laws of Pennsylvania as “ lands, houses, and lots of ground,” as few if any persons would designate it by such a description. It appears from the facts found by the court, that before the work was done upon the street, the plaintiff in error appropriated the lands described in the petition for the track of its road, and that after the improvement was completed, it constructed its road across the street, excavating th® earth for that purpose to the depth of twenty feet, and that the lands appropriated have ever since been occupied by the company exclusively for the track of the road, though the width of the land is not stated, nor does it appear how much thereof is in fact occupied by the bed of the road. We have already seen that a railroad track is, under the laws of Ohio, taxable as real estate, and is therefore properly described as land. At the time the ground was appropriated, and also at the time the street was improved, it certainly came under the description employed in section 116. It was then, if not now, “ land abutting upon said street,” and as such subject to assessment. If the subsequent construction * of the road-bed would have the effect of so changing its character that it would be no longer properly described as “ lots of land,” it might well be doubted if such change could have the effect to divest a lien already acquired. We are, however, clearly of the opinion that even if the ground was all in fact covered by the road-bed, it would still be appropriately described upon the tax duplicate as land in the posses-ion of the railroad company. Swan’s Stat. 926, sec. 77. See, also, Sangamon and Morgan, R. R. Co. v. The County of Morgan, etc., 14 Ill. 163, where it is held that a railroad track is real property and subject to taxation, and that it is included in the terms *“lots and lands,” as used in the statutes of Illinois. It is also apparent, upon a critical examination of section 116, above referred to, that the terms “lots and lands,” as used in that section, cover the track of a railroad. The section, after making the provision before stated, for the improvement of streets and the assessment of the expensa *135 upon the lots and lands abutting thereon, authorizes the city council, by ordinance, to require railroad companies to light their tracks, or such portion thereof as the council may designate, within a specified period, and upon a failure of the company to comply, empowers the city council to cause it to be done, and to assess the cost thereof upon the railroad company, and provides that the amount so assessed shall be a lien upon the lots and lands in the possession of such railroad company from the time of such assessment, and also for the sale of the lots affected by the assessment. It is apparent from these provisions in regard to the lighting of railway tracks, the lien declared and the remedies for its enforcement, that the track itself, when located on lands so appropriated, is to be regarded as land within the meaning of said section, and as such, subject to a lien for the expense of lighting, and to sale if not otherwise paid or discharged. The terms employed, “ lots and lands,” are the same as those used in providing for the assessment for the improvement of the streets, and indicate that the track itself is included in the terms “lots and lands,” in the preceding part of the section. Eor these reasons we are satisfied that the lands appropriated for and occupied by the railroad track at its intersection with Broadway, were liable to the assessment imposed by the city of Toledo, and that those lands were, as between the railway company and the defendant in error, liable to be sold to discharge the assessment, under the lien created by section 116. ¥e are not now called on to determine the nature and extent of the right which would be acquired by the purchaser at such sale, nor whether persons, *not parties to the suit, could interfere to prevent such a sale, were they so disposed.

Judgment affirmed.

Br.in.ker.hoee’, C. J., and Scott and G-holson, JJ., concurred.
Sutliot, J., dissented.